IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| BLAKE WILLIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 01-B-2704-NW |
| ) | |
| ROGER DENTON, in his individual ) | |
| capacity and his official capacity; MAX ) | |
| JOHNSON, in his individual capacity ) | |
| and his official capacity, ) | |
| ) | |
| Defendants. ) | |

ENTERED
SEP 26 2003

## MEMORANDUM OPINION

This case is presently pending before the court on defendants' Motion for Summary Judgment. (Doc. 19.)[1] Plaintiff Blake Willis has sued Roger Denton and Max Johnson, both Colbert County Deputy Sheriffs, alleging that defendants – in their individual and official capacities – violated his constitutional right to be free from unreasonable search and seizure. Upon consideration of the record, the submission of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendants' Motion for Summary Judgment, (doc. 19), is due to be granted, and plaintiff's claims are due to be dismissed.

### I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is

---

[1] Reference to document number, ["Doc."], refers to the number assigned to each document filed in the court's record.

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving parties bear the initial burden of showing no genuine issue of material fact and that they are entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving parties have met this burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the non-moving party need not be given the benefit of every inference but only of every **reasonable** inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. STATEMENT OF FACTS

Plaintiff and his grandson, Jesse Willis, live in Colbert County, Alabama. (Doc. 22, Ex. 5 at 11, Ex. 6 at 20, Ex. 10.) On April 9, 2001, plaintiff was staying overnight at the hospital to undergo some tests. (Doc. 22, Ex. 6 at 10.) While his grandfather was away,

2

Jesse, who was 19 years old at the time, (doc. 22, Ex. 5 at 11), invited a friend, Todd Gordon, a minor, to stay with him. (Doc. 22, Ex. 1 at 56, Ex. 5 at 13-14.) Jesse testified that between 10:00 and midnight, he and Gordon began "target-practicing" in plaintiff's backyard. (Doc. 22, Ex. 5 at 15.) Jesse testified that he fired 20-30 rounds of ammunition from two shotguns. (*Id.* at 17-18.)

Several calls were made to the Colbert County 911 reporting gun shots in the area of plaintiff's house. (Doc. 20, Ex. 3 ¶ 2.) Denton was dispatched around 12:20 a.m. to respond to the calls. (*Id.*, Ex. 1 ¶ 2.) Additional Colbert County sheriff's deputies and Littleville police officers were also dispatched to the area to investigate. (*see* doc. 22, Ex. 2 at 8-9; doc. 20, Ex. 9 ¶ 2.) An individual at the scene told Denton and other officers that the shots were coming from plaintiff's residence. (Doc. 20, Ex. 1 ¶ 7.) Denton and other officers went to plaintiff's residence, which was dark and the garage door was closed when they arrived. (*Id.* ¶ 8.)

Colbert County Deputy Stoney Huguley and an officer from the Littleville Police Department went to knock on the front door; Denton went to see if he could find anyone at the back of the house. (*Id.* ¶ 9.) When Denton returned to the front of the house, he noticed that the garage door was open. (*Id.* ¶ 11.) Gordon was standing in the driveway. (Doc. 22, Ex. 2 at 17-18, Ex. 4 at 26.) Denton encountered Gordon, who was apparently intoxicated and who did not live at the residence. (Doc. 20, Ex. 1 ¶¶ 10-12.) Gordon told Denton that Jesse was drunk and that Jesse had been shooting a gun. (*Id.* ¶ 10.) He also told Denton that

Jesse had gone into the woods when saw the approaching police cars and that no one was inside plaintiff's residence. (*Id.* ¶¶ 10, 12.)

Johnson arrived on the scene as Denton was talking to Gordon. (Doc. 20, Ex. 3 ¶ 3.) Denton told Johnson, his sergeant, that Gordon did not live at the residence and that the owner was not present. (*Id.* ¶ 4; doc. 22, Ex. 2 at 32.) Johnson then instructed Denton to enter the house to make sure that everything was okay. (Doc. 22, Ex. 2 at 32.) Denton and Colbert County Deputy Paul Preedom detected the odor of marijuana as they entered the garage and approached the interior door to the house. (Doc. 20, Ex. 1 ¶ 14, Ex. 9 ¶ 5.) They opened the door to the house and the smell of marijuana became stronger. (Doc. 20, Ex. 1 ¶ 15.)

Contrary to the testimony of the officers, Jesse testified that officers had knocked on his door and that they had asked to "look around" the residence. (Doc. 22, Ex. 5 at 19, 21.) He testified that he had refused. (*Id.* at 21.) He also testified that Gordon, who he alleges was then in the living room of plaintiff's residence, told him that "the law" was "coming in," as he began to go to the basement to shoot pool.[2] (*Id.* at 22-23.) Denton and Preedom arrested Jesse in the basement.[3] (*Id.* at 24; doc. 20, Ex. 1 ¶ 17; doc. 26, Ex. 11 at 3.) Jesse was charged with disorderly conduct, possession of marijuana, resisting arrest, and posession of drug paraphernalia. (*See* doc. 26, Ex. 12.) Defendants testified that Jesse appeared to be

---

[2]Jesse also testified that Gordon was in handcuffs in the front yard. (Doc. 22, Ex. 5 at 22.) The court notes that Gordon was arrested at the scene on an outstanding warrant. (Doc. 22, Ex. 2 at 9.)

[3]Defendants testified that they found Jesse face down in a closet in the basement. (*See* doc. 20, Ex. 9 ¶ 8.)

4

under the influence of one or more controlled substances at the time of his arrest; however, Jesse denied any drug or alcohol consumption. (Doc. 20, Ex. 1 ¶ 19; doc. 22, Ex. 5 at 15.)

At the time they arrested Jesse, defendants seized plaintiff's firearms and ammunition, as well as marijuanna joints, butts of joints, seeds, and drug paraphernalia. (Doc. 26, Exs. 11 and 12.) In the incident report, Denton stated that the weapons were taken "because we were afraid [Jesse] would bond out and did not need to have ready access to the weapons due to the shape he was in." (Doc. 26, Ex. 11 at 3; *see also* doc. 20, Ex. 9 ¶¶ 9-10.)[4]

About an hour after plaintiff returned home from the hospital that morning, he retrieved his firearms. (Doc. 22, Ex. 6 at 11-13, 31-32.) When plaintiff retrieved his firearms, he noted that some of the ammunition was missing,[5] there were some scratches on the guns, and one of the scopes was off center. (Doc. 22, Ex. 6 at 32, 40-42.)

### III. DISCUSSION

Plaintiff contends that defendants violated his rights under the Fourth and Fourteenth Amendments by entering his house and taking his firearms without a warrant. Defendants

---

[4]Preedom testified:

> In situations where alcohol and drugs are involved, we normally remove guns from a house and log them in at the County jail. The owner of the guns may retrieve them after the substances have worn off.
>
> We removed the guns from the house because we feared that if Jesse Willis or Todd Gordon, who were obviously inebriated, made his bond and returned to the house, the[y] could harm themselves or others.

(Doc. 20, Ex. 9 ¶¶ 9-10.) Gary Alverson, Colbert County District Attorney, testified that, depending on the circumstances, a person charged with a misdemeanor, like Jesse, could "bond[ ] out almost immediately." (Doc. 22, Ex. 1 at 57.)

[5]Plaintiff testified that he stored the firearms loaded. (Doc. 22, Ex. 6 at 40.)

5

contend that they are entitled to judgment as a matter of law as to all claims because (1) they did not violate plaintiff's constitutional rights because the entry into his residence and the seizure of the firearms were reasonable under the circumstances, (2) they are entitled to Eleventh Amendment immunity as to the claims against them in their official capacities; (3) they are entitled to qualified immunity as to the claims against them in their individual capacities, and (4) punitive damage claims are not allowed against the officers.

### A. OFFICIAL CAPACITY CLAIMS – ELEVENTH AMENDMENT IMMUNITY

The claims against defendants in their official capacities are claims against the State of Alabama. The Colbert County Sheriff and his deputies are officials of the State of Alabama, not Colbert County. *McMillian v. Johnson*, 88 F.3d 1573, 1580-81 (11th Cir. 1996)(citations omitted), *aff'd sub nom.*, *McMillian v. Monroe County*, 520 U.S. 781 1997). Because defendants, as deputies of the Colbert County Sheriff, are State officials, this action against them in their official capacities is the same as an action against the State of Alabama. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)(a suit against a public official in his official capacity is – in all respects – one against the entity he represents). Suits against the State that seek money damages are barred by the Eleventh Amendment to the United States Constitution.[6] This suit seeks money damages against defendants; therefore, it is barred by the Eleventh Amendment. *See Green v. Mansour*, 474 U.S. 64, 67-68 (1985).

---

[6]The Eleventh Amendment of the United States Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." "Although not readily apparent from the amendment's text, it has long been settled that the amendment applies equally to suits against a state brought in federal court by citizens of that state." *Harbert International, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998)(citing *Hans v. Louisiana*, 134 U.S. 1, 18-19 (1890)).

6

Defendants' Motion for Summary Judgment is due to be granted as to plaintiff's claims against defendants in their official capacities.

## B. INDIVIDUAL CAPACITY CLAIMS

Defendants contend that the claims against them in their individual capacities are due to be dismissed because they are entitled to qualified immunity. "Under qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Carr v. Tatangelo*, 338 F.3d 1259, 1266 (11th Cir. 2003)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)(quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)))(internal citations and quotations omitted.).

The Eleventh Circuit uses a two-step analysis to determine whether a public official has qualified immunity: (1) the public official must establish that he was acting within the scope of his discretion; and (2), if the public official establishes that he was acting within his discretion, the plaintiff must show that the public official violated clearly established statutory or constitutional law. *Wood v. Kesler*, 323 F.3d 872, 877-78 (11th Cir. 2003); *Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1236 (11th Cir. 1992). The parties do not dispute that defendants were acting within their discretion as sheriff deputies; therefore, the

sole issue for the court is whether defendants' actions violated clearly established constitutional law.

"The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope*, 536 U.S. at 736. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Kesler*, 323 F.3d at 877-78 (quoting *Saucier*, 533 U.S. at 201).

Plaintiff contends that "warrantless entries to and searches of a residence are presumptively unreasonable and . . . the burden is on the Defendants to demonstrate exigent circumstances justifying a warrantless entry and search." (Pl. Mem. in Opp. to Mot. for Summ. J. at 12.) However, in a civil action brought pursuant to § 1983, plaintiff bears the burden of demonstrating a constitutional violation. *Kesler*, 323 F.3d at 877-78.

The evidence indicates that defendants, and other law enforcement agents, were called by plaintiff's neighbors reporting shots coming from the area of plaintiff's home in the middle of the night. Officers on the scene are met by Gordon, who was apparently under the influence of alcohol or drugs, who told them that Jesse had been shooting in the backyard and that he is drunk. Approaching the house from the garage, Denton and another officer smell marijuana. They enter the house and observe rolled joints, butts of joints, seeds, and drug paraphernalia. They arrested Jesse, who is apparently under the influence of alcohol or drugs.

This evidence of the smell of marijuana at the scene is sufficient to establish probable cause that, at the very least, the offense of marijuana use is occurring. *See United States v. Lueck*, 678 F.2d 895, 903 (11th Cir. 1982)("The [Old] Fifth Circuit has clearly established that the recognizable smell of marijuana gives rise to probable cause supporting a warrantless search." (citing *United States v. Rivera*, 595 F.2d 1095 (5th Cir. 1979); *United States v. Barnard*, 553 F.2d 389, 391 (5th Cir. 1977); *United States v. Diaz*, 541 F.2d 1165, 1166 (5th Cir. 1976); *United States v. Coffey*, 520 F.2d 1103, 1104 (5th Cir. 1975)); *see also Adams v. State*, 815 So.2d 578, 581-82 (Ala. 2001)(citing, *inter alia*, Donald M. Zupanec, *Odor of Narcotics as Providing Probable Cause for Warrantless Search*, 5 A.L.R.4th 681 (1981)); *Cameron v. State*, No. CR-01-1845, 2003 WL 569713, *4 (Ala. Crim. App. Feb 28, 2003)("We hold that the strong and overwhelming smell of marijuana emanating from the house, combined with Officer Watkins's testimony regarding his ability to identify the distinctive odor of marijuana, established the existence of Officer Watkins's probable cause to believe that contraband was present inside the residence.").

The evidence of drug use, together with information of shots fired and that the shooter was under the influence, are exigent circumstances that the officers needed to act immediately to protect themselves and others against the danger of harm. Moreover, the officers action of seizing the firearms until the owner could return to the residence is a reasonable and prudent action under the circumstances.

Based on the evidence the court finds that the actions of Johnson and Denton did not violate the Fourth Amendment rights of plaintiff.

However, even if the court assumes that Denton and Johnson violated plaintiff's constitutional rights by entering his house and seizing his weapons, the court finds that the law was not so clear as to give defendants fair warning that their conduct violated established constitutional rights. "Even 'constitutionally impermissible conduct' might not render government officials liable for civil damages if those actions had not been clearly established as violative of the Constitution when they occurred." *Carr*, 338 F.3d at 1266 (citing *Hope*, 536 U.S. at 739). A constitutional right is "clearly established" if its "contours" are

> sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Hope*, 536 U.S. at 739 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)(internal citations and quotations omitted). "The 'clear' requirement stems from the fact that the purpose of qualified immunity is to protect government officials performing discretionary functions from civil liability when their actions violate no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003)(quoting *Hope*, 536 U.S. at 739). "In this circuit, rights are 'clearly established' by decisions of the Supreme Court, [the Eleventh Circuit Court of Appeals], or the highest court of the state in which the case arose." *Id.* (citing *Hamilton v. Cannon*, 80 F.3d 1525, 1532 n.7 (11th Cir. 1996)).

Plaintiff contends that the warrantless search is "per se unreasonable." (Pl. Mem. in Opp. to Mot. for Summ. J. at 16 (citing *United States v. Alexander*, 835 F.2d 1406, 1408

10

(11th Cir. 1988). He also cites the court to several opinions for the proposition that the law clearly established that defendants' actions violated plaintiff's consitutional right to be free from unreasonable search and seizure.[7] However, none of these opinions addresses the same or similar salient circumstances as were present in this case.

The court finds that the pertinent facts of this case – the apparent use of drugs and firearms by unsupervised youths – compel the court to find that the law was not "clearly established" that defendants (1) could not enter the residence, and (2) could not secure the firearms found therein until the owner could retrieve them. The fact of drug and weapon use by unsupervised young men distinguishes this case from those cited by the plaintiff. Indeed, the unique factual circumstances are such that the court cannot say that defendants had "fair notice" that their actions of entering the residence and removing the firearms would violate the constitutional rights of plaintiff as owner of the residence and the firearms.

Therefore, the court finds that defendants' Motion for Summary Judgment is due to be granted as to plaintiff's claims against them in their individual capacities.

---

[7]Plaintiff cites *Quik Cash Pawn & Jewelry, Inc. v. Sheriff of Broward County*, 279 F.3d 1316, 1324 (11th Cir. 2002)(cited for the proposition that seizure of plaintiff's property without a warrant violated plaintiff's "due process right to predeprivation notice and hearing"); *Swint v. City of Wadley*, 51 F.3d 988, 998 (11th Cir. 1995)(cited for the proposition that a warrantless raid on a nightclub and seizure of all its occupants violated "clearly established" rights); *United States v. McGregor*, 31 F.3d 1067, 1067 (11th Cir. 1994)(cited for the proprosition that "[a] warrantless search is presumptively unreasonable"); *United States v. Alexander*, 835 F.2d 1406, 1408 (11th Cir. 1988)(cited for the proposition that "a warrantless search is *per se* unreasonable"); *Bull v. Armstrong*, 48 So 2d 467, 470 (1950)(cited for the proposition that a law enforcement officer who illegal searches "a person's premises is liable to that person in an action at law for damages").

**C. PUNITIVE DAMAGES**

Because the court finds that defendants' Motion for Summary Judgment is due to be granted and plaintiff's claims are due to be dismissed, the court pretermits discussion of whether plaintiff may recover punitive damages against defendants in their individual capacities.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendants are entitled to judgment as a matter of law. An order granting defendants' Motion for Summary Judgment will be entered contemporaneously with this Memorandum Opinion.

**DONE** this  26th  day of September, 2003.

_____
**SHARON LOVELACE BLACKBURN**
United States District Judge